IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA DEL PILAR ANCHANTE,

Plaintiff,

v.                                                    CIVIL NO. 18-1855 (CVR)

DENIS R. MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,

Defendant.

## OPINION AND ORDER

## INTRODUCTION

Plaintiff María del Pilar Anchante ("Plaintiff") brought the present case against the United States Department of Veterans Affairs through its Secretary, Denis R. McDonough[1] ("Defendant" or "VA"). Plaintiff, a longtime employee of the VA, claims she was subjected to a hostile-work environment by her supervisors and co-workers because of her Peruvian national origin. (Docket No. 15). She argues the VA discriminated against her and harassed her by maintaining and imposing employment practices which were not enforced against others. Id. Plaintiff complained to the VA verbally and in writing, as well as through internal grievance procedures, but her claims went unheeded. Id. This culminated in the filing of two formal EEO charges against the VA, one in 2014 and a second one in 2018, where Plaintiff included a laundry list of her grievances at the hands of her supervisors and co-workers. Id. Notwithstanding, she proffers the VA failed to take any corrective action and the alleged misconduct continued unabated. Plaintiff

---

[1] Robert Wilkie was Secretary of the VA when this case was filed. Denis R. McDonough was sworn in as head of said agency on February 9, 2021. Therefore, Secretary McDonough is automatically substituted as a Defendant in this case. See Fed. R. Civ. P. 25(d).

alleges the VA instead undertook retaliatory action against her because of her complaints, which resulted in Plaintiff's ultimate dismissal from the VA in May 2019 and the filing of this case.  Id.

Plaintiff claims are under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") seeking compensatory damages as result of a hostile work environment by reason of her national origin and disabilities.  She also avers that the VA violated the Family and Medical Leave Act ("FMLA") and took retaliatory actions against her for engaging in protected activity, which culminated in her ultimate discharge.  She claims damages for these allegedly discriminatory actions.

Before the Court now is Defendant's "Motion for Summary Judgment" and "Memorandum in Support of Summary Judgment and Motion to Dismiss for Lack of Subject Matter Jurisdiction."  The VA contends that some of Plaintiff's claims are time-barred, insofar as she failed to initiate contact with an EO Counselor within a specific time frame after the alleged injurious acts, as required by law.  As to Plaintiff's claims of hostile work environment, the VA posits that she cannot establish that the actions complained of were done because of her national origin.  Even if she could so establish, the VA argues, the actions complained of were not sufficiently pervasive or severe to be actionable.  Regarding the retaliation claim, the VA avers there is no causal connection between the actions complained of and the protected activity.[2]  (Docket Nos. 69 and 71).

Plaintiff alleges in her Opposition that her claims are timely, the evidence supports

---

[2] Defendant also requested the dismissal of Plaintiff's discrimination claims for reasonable accommodation brought under the Rehabilitation Act and the Federal Employees Compensation Act, asserting that the Court lacks jurisdiction to hear them.  To this effect, Plaintiff indicated in her Opposition that she "will not pursue this theory any longer" and did not address them therein. (Docket No. 93, footnote 1).  Therefore, these claims are deemed waived and DISMISSED WITH PREJUDICE.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

her hostile work environment, retaliation and FMLA claims, and that Defendant's proffered reasons for all its actions are a pretext for discriminating against her and ultimately dismissing her from her position at the VA. She posits there are issues of material fact that must be determined by a jury and calls for the denial of the VA's Motion for Summary Judgment. (Docket No. 93).

Defendant then filed a Reply to Plaintiff's Opposition (Docket No. 108) and Plaintiff filed a Sur-Reply thereto. (Docket No. 115).

For the reasons explained below, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. (Docket No. 69).

## STANDARD

Summary judgment is appropriate if "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a) and (c). Pursuant to the explicit language of the rule, the moving party must establish this two-fold element. Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable

factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy.

Time and again, the First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is - and what is not - genuinely controverted.'" Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Loc. Rule 56(e); Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448 (1st Cir. 2022).

Before moving on, the Court must mention that Plaintiff's Opposition to Defendant's Statement of Uncontested Material Facts (Docket No. 88) is procedurally non-compliant with the Local Rules, insofar as many of the denials do not oppose the truth of the statement offered. A review of Plaintiffs' qualifications to Defendant's factual statements shows that they are irrelevant to the matter at hand, offered voluminous explanations and additional evidence not related to the fact in question and/or failed to contradict it. Many of Plaintiff's denials inject factual matters into her explanations for the denials. Rodríguez-Soto v. Presbyterian Med. Anesthesia Grp., Civil No. 17-1477, 2019 WL 1349991 at *2 (D.P.R. Mar. 22, 2019) ("A party's denial or qualification of a proposed fact must be strictly limited to the issue therein raised. Any additional information shall be included in a separate section in order to ease the Court's task."). Consequently, the Court accepted most of Defendant's facts as uncontested.

Additionally, together with Plaintiff's Opposition, she filed a separate statement of material facts she proffered are not in controversy. (Docket No 88). However, almost all of them are supported by a "Rebuttal Statement Under Penalty of Perjury" signed by Plaintiff the day before she filed her Opposition. (Id., Exhibit 25) (the "First Statement"). This First Statement was apparently missing information and on May 4, 2023, almost three (3) months after filing her Opposition, Plaintiff filed a "Notice of Errata" seeking to substantially amend the First Statement and add many direct references to her Amended Complaint via a "Rebuttal Statement Under Penalty Of Perjury (Corrected)". (Docket No. 111) (the "Second Statement"). Defendant objected to this notice via a "Motion to Strike" which Plaintiff opposed. (Docket Nos. 112 and 116).

Defendant objects and argues the statements are "sham affidavits" made at the last

minute to counter the Motion for Summary Judgment.  Under this doctrine, a party may not use an affidavit after the end of discovery to contradict facts previously provided to survive summary judgment, unless the party provides a satisfactory explanation for providing the post-summary judgment affidavit.  Morales v. AC Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001).  In determining whether the testimony constitutes an attempt to manufacture an issue of fact to defeat summary judgment, the court may consider the timing of the affidavit, as well as the party's explanation for the discrepancies.  See Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006).  Such testimony can be stricken by the court when the party proffering the evidence provides no satisfactory explanation for the changed testimony.  Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 20-21 (1st Cir. 2000).

Notably, the timing of the First Statement, signed by Plaintiff the day before the filing of her Opposition, by itself, raises serious concerns as to its validity and authenticity. Orta-Castro, 447 F.3d at 110 and n. 2. ("[T]he Statement was executed only after [the defendant] had filed its motion for summary judgment, thus suggesting that the Statement was made solely to create an issue of fact for the purpose of surviving summary judgment").

The timing of the Second Statement is likewise suspect, since it was signed and filed a few days after the VA filed its Reply, which undoubtedly alerted Plaintiff as to missing information in her First Statement.   Equally problematic is paragraph 6 of the Second Statement, where Plaintiff reasserts that there was an "omission" in the First Statement, and reasserts "by reference the factual statements contained in the following paragraphs of the Amended Complaint (ECF No. 15) ¶¶ 4.1, 4.2, 4.3, 5.1, 5.2, 5.3, 5.4,

5.5(A)-(J), 5.6, 5.7, 5.8, 5.9, 5.11, 5.13, 5.14, 5.15, 5.16, 5.19 and 5.20 and incorporate the same herein as if fully set forth." (Docket No. 111, Exhibit 1, p. 2).

In opposition to Defendant's proffered facts and support of most of her own as well, Plaintiff merely cited to her own Amended Complaint, which is not probative of any conduct, and on the contrary, is precisely what Plaintiff must prove with direct evidence. Allegations are not evidence and cannot be used at the summary judgment stage to buttress a claim and to defeat summary judgment, even less so when the Amended Compliant is not verified.[3]  In particular, signing a statement to incorporate allegations contained in the unverified Amended Complaint at this late date to overcome this glaring deficiency is clearly a last-minute attempt to defeat summary judgment.  At this juncture, to properly oppose Defendant's proffered facts, Plaintiff must bring forth direct evidence of her claims, not merely allegations. "On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).

For the reasons explained above, the Court did not consider any facts based on the information contained in the Second Statement, and GRANTS Defendant's Motion to Strike Plaintiff's "Notice of Errata." (Docket No. 112).

### UNCONTESTED FACTS

1.  Plaintiff was born in 1976, in Ica, Perú.  D. Exhibit 1, p. 7, l. 18-20; p. 8, l. 23-24.

---

[3] Under Federal Rule of Civil Procedure 56 "a party cannot successfully oppose a motion for summary judgment by resting 'upon mere allegations or denials of his pleading.'" Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016) (quoting Pina v. Child.'s Place, 740 F.3d 785, 795 (1st Cir. 2014)). "[M]ere allegations are not entitled to weight in the summary judgment calculus." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010); Tibbs v. City of Chicago, 469 F.3d 661, 663 fn. 2 (7th Cir. 2006) ("the entire 'Statement of Facts' section of Tibbs's appellate brief cites only to his amended complaint; mere allegations of a complaint are not evidence"); Geshke v. Crocs, Inc., 740 F.3d 74, 78 (1st Cir. 2014) ("unverified allegations in a complaint are not evidence").

2. Plaintiff graduated from high school in Perú and obtained a bachelor's degree in nursing from the Interamerican University of Puerto Rico.  She later obtained a certification in critical care at the Medical Sciences Campus.  D. Exhibit 1, p. 10, l. 15-25; p. 11, l. 9-14.

3. Plaintiff worked at the American Red Cross for about 5 years as coordinator for Platelet Apheresis where she would call donors to donate platelets, until she applied for and was offered a position at the VA on or about May 2008.  D. Exhibit 1, p.11, l. 18 -20; p. 12, l. 1-25; p. 13, l. 1-4.

4. Plaintiff applied both to a kitchen position and a medical supply technician position at the VA.  While called for the kitchen position, she had the qualifications and was offered a position as a Medical Supply Technician. This is how Plaintiff began employment with the VA.  D. Exhibit 1, p. 13, l. 5-25; p. 14, l. 1-5.

5. From January 2014 through February 2017, Yadira López ("Supervisor López"), Medical Supply Department supervisor, was Plaintiff's first line supervisor while she was a Medical Supply Technician. D. Exhibit 2, p. 265, sub-p. 5, l. 2-6.

6. During the relevant time period of February 2017 to May 2019, Supervisor Susan J. Ruiz ("Supervisor Ruiz"), VA Community Care Supervisory Program Specialist, was Plaintiff's first line supervisor.  Supervisor Angie Zayas ("Supervisor Zayas") was the Chief of Community Care Service when Plaintiff was later employed as a Program Support Assistant.  D. Exhibit 3, p.0436, ¶ 5.

7. Plaintiff worked for the VA from approximately May 2008 until 2017 as a Medical Supply Technician, name that was later changed to Supply Technician.  D. Exhibit 1, p.14, l. 6-26; p. 15, l. 1.

8.  Plaintiff's job description states that the primary duties of the Medical Supply Technician is to provide 24 hours, 7 days a week of service and distribution support for medical and surgical supplies to all wards, clean rooms and identify secondary distribution points in the medical center and outpatient clinics, including the U.S. Virgin Islands. Major duties include inventory management, receiving, distribution, equipment and infection control.  D. Exhibit 1, p.15, l. 7-25; p. 16, l. 1-9, and Exhibit 9 of the deposition.

9.  The work involves, among other things, providing clean and sterile medical/surgical supplies, equipment and related supplies and accessories to all patient treatment areas of the VA Medical Center and the outpatient clinics.  D. Exhibit 5, p. 614-619; D. Exhibit 1, p. 15, l. 7-25; p. 16, l. 1-9 and Exhibit 9 of the deposition.

10. The position was a rotating shift position from 6:30 a.m. to 3:00 p.m.; 7:30 a.m. to 4:00 p.m.; 3:30 p.m. to 12:00 a.m.; and 12:00 a.m. to 8:00 a.m. and included weekends and holiday work schedule. D. Exhibit 5, p. 615, ¶ 3.

11. On November 3, 2014, while employed as a Medical Supply Technician, Plaintiff sought EEO counseling.  D. Exhibit 6, p. 118, ¶ 1.

12. On December 4, 2014, Plaintiff filed a formal EEO complaint alleging she was subjected to unlawful harassment perpetrated by her co-workers and agency managers. She claimed that the VA's decisions were motivated by unlawful discrimination based on national origin and in reprisal of prior EEO activity and contained a total of 17 counts.  D. Exhibit 7, p. 94-101.  Plaintiff later filed a second claim on October 8, 2015.  D. Exhibit 17.

13. On February 12, 2015, the EEO sent Plaintiff a notice of partial acceptance.  D. Exhibit 6, p. 119, ¶ 3; p 121, ¶ 7.

14. In the notice of partial acceptance, a claim related to a suspension was dismissed because it was subject to the terms of the negotiated grievance procedure. Also, events prior to September 19, 2014, events No. 1 through 9, were deemed untimely as discrete acts as they were not raised within the 45-day time limit, but were accepted for consideration of the overall of the harassment claim.  D. Exhibit 6, p. 118-129.

15. On February 20, 2015, while performing her duties transferring oxygen tanks from one building to another, Plaintiff suffered a work-related injury and was placed on light duty for more than a year. The light duty consisted of supplying small clinics, preparing arrest carts and gondolas, and receiving merchandise.  D. Exhibit 1, p.21, l. 3-10, 16-25; p. 22, l. 15-20; p. 23, l. 1-9, 22-25; p. 24, l. 1-4; D. Exhibit 8, p. 0161, ¶ 1.

16. Plaintiff required a specialty uniform made out of cotton due to skin irritation.  As such, Plaintiff was required to submit medical documentation prior to obtaining the uniform. The request did not come from Supervisor López, it came from the Logistics Item Manager. On April 4, 2014, Plaintiff submitted the medical documentation. On May 23, 2014, the VA gave instructions for the purchase of the uniform. D. Exhibit 10, p. 1046.

17. On one occasion, all employees including Plaintiff were required to return their keys. Special keys are controlled and assigned by the VA Police Service. In November 2013, all employees were notified that keys that were not in use or doors

that changed to a cypher lock system would no longer require keys.  In January 2014, Police Service came down to inspect all of the employees' keys. Plaintiff was out to lunch, and when she returned, they asked to see the keys she had and removed them, as she had keys to unauthorized spaces. This was carried out by Police Service, not Supervisor López.  D. Exhibit 2, p. 267, sub-13, l. 2-25; p. 268; p. 269, sub, 18, l. 1-25, and sub-19, lines 1-2; D. Exhibit 11, p. 329, ¶ 7.

18. Plaintiff would continually leave "picking tickets" or unfinished jobs, throughout two weeks prior to September 30, 2014, for coworkers on the afternoon shift to complete. Coworkers Gladys Córdova, Javier Pérez-Aponte and Pedro García complained to Supervisor López about Plaintiff leaving unfinished work and assigning her leftover work to other shifts.  Córdova informed Supervisor López that this was not the first time Plaintiff left her work for others to finish.  D. Exhibit 2, p. 273, sub-36, l. 8-22; D. Exhibit 25.

19. Supervisor López informed Plaintiff that she was not authorized to assign work to any employee without prior supervisory approval.  D. Exhibit, 2, p. 273, sub-37, l. 1-25; D. Exhibit 13, p. 984.  Supervisor López provided Plaintiff with assistance so she could be able to complete her work before the end of her shift.  D. Exhibit 2, p. 273, sub-37, l. 1-25.

20. In October 2014, Plaintiff issued a "Report of Contact" alleging that a co-worker, José Luis Rivera, forcibly grabbed a cart she was holding and waved a finger in her face. D. Exhibit 14, p. 953.

21. As shift supervisor, Supervisor López was on call 24/7. On October 28 and 31, 2014, she was in the process of completing employee evaluations and had to come

in early to complete those reviews. The persons she supervised worked rotating shifts, so she would come in from time to time to evaluate an employee. D. Exhibit 2, p. 275, sub-43, l. 17-25; sub-44, l. 1-25; and sub-45, l. 1-5.

22. In January 2015, notice was given to all employees that there would be a rotating shift from midnight to 8:00 a.m. because an employee working that shift had transferred to another department on January 15, 2015.  To give employees enough notice, they were told that effective March 2015, all employees would be rotating the midnight to 8:00 a.m. shift. D. Exhibit 2, sub-48, l. 17-25, sub-49, l. 1-25; D. Exhibit 15, pp. 1082- 1087.  The criterion used for all employees was seniority, and the rotating shift was done considering the service needs of the institution and the patients it served.  From a list of 18 employees, Plaintiff ranked number 17 in terms of seniority.  D. Exhibit 16, p.1077.

23. The rotating shift did not impact Plaintiff's salary, wages or benefits in any way. D. Exhibit 2, p. 277, l. 2-7.

24. On September 17, 2015, Plaintiff was notified that her tour of duty for the week of September 22-25, 2015 would change from 7:30 a.m. to 4:00 p.m. to 12:00 a.m. to 8:00 a.m.  She was told Labor Relations and Human Resources requested the change so she could attend appointments, a court date, and human relations meetings and interviews, since she was trying get a reassignment at the facility and had pending matters.  D. Exhibit 18, p. 0235, l. 1-25; p. 0236; D. Exhibit 19, p. 0309-0310.  Plaintiff was supposed to receive advance notice of this change, but did not.  D. Exhibit 18, p. 240, l. 5-7.

25. Although Plaintiff had been notified of a tour of duty change to the afternoon- night

shift, she was returned to the day shift of 7:30 a.m. to 4:00 p.m. effective October 6, 2015, through December 31, 2015, with Saturdays and Sundays off. This change was agreed upon by the Union and Labor Relations. D. Exhibit 20; D. Exhibit 21, p. 0312.

26. On Saturday, October 24, 2015, Supervisor López was notified by phone that Plaintiff had shown up to work when she was supposed to be off. She instructed Plaintiff to leave because it was in violation of the memorandum for the special tour of duty. D. Exhibit 18, p. 0256, l. 24-25; p. 0257, l. 1-20.

27. On Sunday, October 25, 2015, Supervisor López saw Plaintiff working and informed her she was not authorized to be working, but Plaintiff walked away. Supervisor López contacted the Police Service to inform them that Plaintiff was on premises while not on her tour of duty. Supervisor López showed the Police the memorandum and Plaintiff was asked to leave. Plaintiff remained on premises for an hour longer and then left. D. Exhibit 18, p. 0259, l. 14-25; p. 0260, l. 1-24.

28. On November 9, 2015, Plaintiff requested sick leave over the phone and was afforded her balance of 3.75 hours. Leave without pay was then disapproved due to operational needs because Plaintiff had refused to take her remaining sick leave balance and had no annual leave balance left. D. Exhibit 18, p. 0265, l. 18-25; p. 0266, l. 1-25; p. 0267, l. 1-12.

29. At the time Plaintiff was deposed, she could not recall the names of other co-workers that Supervisor López approved leave for while denying hers. D. Exhibit 1, p. 68, l. 8-10.

30. On February 3, 2016, the EEO consolidated Plaintiff's two cases before it, No. 200I-0672-2015100535 and No. 200I-0672-201505596.  D. Exhibit 17.

31. Following a work-related injury, Plaintiff was placed on light duty accommodating her temporary medical restrictions and on February 2, 2017, was offered the position of Program Support Assistant to accommodate her for her work-related condition, commensurate with her medical restrictions and medical/physical limitations under the Federal Employees Compensation Act, Title 5 U.S.C.§ 1806.  D. Exhibit 35, p. 0158-0160; D. Exhibit 24; D. Exhibit 10.

32. On December 13, 2017, Plaintiff was reprimanded for failing to complete her assigned caseload for two days in a row. D. Exhibit 25, p. 895-896, ¶¶ 1-6.

33. Plaintiff was required to complete 36 cases per day and only completed 8 cases each day. D. Exhibit 25, p. 895-896, ¶¶ 1-6.

34. On December 14, 2017, Supervisor Angie Zayas sent Plaintiff a memo where she informed her about her unfinished work on December 12 and 13, 2017.  D. Exhibit 25, p. 895-896, ¶¶ 1-6.

35. From January 17 to February 2, 2018, Plaintiff requested leave. D. Exhibit 26, p. 0495, ¶¶ 42-43.

36. The January 17 to February 2, 2018, leave charged to the Plaintiff as AWOL ("absent without leave") was not punitive in nature.  There was no way to distinguish the discretionary Leave Without Pay in the VA's Time and Attendance system.  To track this, management was instructed to enter "AWOL-No Leave Balance" to identify that the leave was discretional and that it was approved. The remark was not considered punitive or disciplinary. D. Exhibit 26, p.0495, ¶¶ 42-

43.

37. FMLA requests may be denied when an employee is not found eligible for FMLA or when FMLA request is intermittent, and a mutual time needs to be established by both the agency and the employee in accordance with the medical recommendations and as established in the Code of Federal Regulations. D. Exhibit 26, p.0495, ¶ 45.

38. On February 21, 2018, Plaintiff initiated contact with an EEO counselor. D. Exhibit 27, p. 0048, ¶ 1.

39. On March 20, 2018, Plaintiff filed a formal complaint of discrimination alleging she was discriminated against based on disability, retaliation and subjected to a hostile work environment.  D. Exhibit 27, p. 0048, ¶ 1 and 3.

40. On May 4, 2018, the EEO sent Plaintiff a notice of partial acceptance.  D. Exhibit 27, p. 0048-0062.

41. On July 11, 2018, pursuant to Plaintiff's request, the EEO sent Plaintiff a Notice of Amendment.  D. Exhibit 28, p. 0064-0070.

42. In the Notice of Amendment, 10 claims were deemed untimely as they were not raised within the 45-day time limit and are part of Plaintiff's Amended Complaint. Docket No. 15, p.14, ¶ 5.11 (A), (B), (K) and (L); D. Exhibit 28, p. 0067, ¶ 7.   The 10 claims were ultimately investigated and considered by the EEO as part of Plaintiff's overall harassment claim.

43. On February 26, 2018, Supervisor Zayas issued Plaintiff a performance memorandum for not completing the required workload outlined in her position description and performance standards.  D. Exhibit 29, p. 0915; D. Exhibit 30, pp.

0365-367.

44. Plaintiff's Leave Without Pay requests from May 13 and 17, 2018 were not denied. Plaintiff was afforded leave through FMLA.  Leave Without Pay is discretional and may be based on service needs. D. Exhibit 26, p.0503, ¶ ¶ 6, 9, p. 504, ¶ ¶ 10, 11, 13, 13(a), p. 507, ¶ ¶ 30-36.

45. On May 22, 2018, Plaintiff received a "Letter of Instruction for Unscheduled Leave" dated May 15, 2018, given that her high volume of unscheduled absences were affecting productivity. D.  Exhibit 26, p. 0509, ¶ 49(c).

46. Plaintiff was diagnosed with Major Depression and Generalized Anxiety Disorder in June 2014.  Dr. Ramón Cuevas-Natal ("Dr. Cuevas"), her treating psychiatrist, sent this medical certificate to the VA.  P. Exhibit 36.

47. Plaintiff's medical conditions were gradually exacerbated to the point where she suffered a severe nervous breakdown in July 2018, which forced her to seek psychiatric care and required her to be hospitalized several times in 2018 at Hospital Panamericano.  P. Exhibit 37.

48. On July 30, 2018, Dr. Cuevas issued a certificate recommending a medical leave of absence until January 30, 2019.  D. Exhibit 38.

49. On August 10, 2018, Plaintiff's EEO Complaints were ultimately dismissed, finding no retaliation or harassment. D. Exhibit 31.

50. On October 17, 2018, Plaintiff was notified a "Return to Duty" letter due to her unscheduled absences. D. Exhibit 32.

51. On March 18, 2019, Dr. Cuevas recommended extending Plaintiff's medical leave of absence until April 17, 2019.  P. Exhibit 39.

52. On April 17, 2019, Dr. Cuevas found Plaintiff totally disabled to work and issued a medical certificate placing her on medical rest until his next re-evaluation scheduled for May 16, 2019.  At that time, Dr. Cuevas recommended that she apply for disability retirement.  P. Exhibit 40.

53. On April 23, 2019, the VA notified Plaintiff of her "Proposed Removal" under the authority of 38 U.S.C. § 714 due to her unauthorized absences from October 17, 2018 through January 30, 2019 and for her failure in following leave request procedures. D. Exhibit 33.

54. On May 9, 2019, the VA notified Plaintiff her "Removal of Employment."  D. Exhibit 34.

55. Plaintiff is currently unqualified to perform the duties of her employment due to her permanent inability to work. P. Exhibit 41, p. 5 and 8.

56. Co-worker Myrna González ("Mrs. González") heard Plaintiff's co-workers and Supervisor López making comments about her national origin.  D. Exhibit 36, p. 5.

57. Mr. Fernando Algarín-Rodríguez ("Mr. Algarín") heard Mr. José Rivera ("Mr. Rivera") refer to Plaintiff one time as "la importada" (the imported one) in September 2014.  In November 2014, he heard Mr. Rivera say that "there are some people that are scum working here" and "people from third world countries are useless."  D. Exhibit 37, p. 1100.

## LEGAL ANALYSIS

### A. Title VII.

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment because of such individual's race, color, religion sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).  In making a claim for employment discrimination, a plaintiff may rely on direct evidence or by using the *prima facie* case and the now familiar burden shifting method from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, (1973).  The Court's job is therefore to examine the evidence presented as a whole and determine whether it is sufficient for a reasonable factfinder to determine that the employer's decision was motivated by a discriminatory animus based on membership in a protected class.  See Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 335 (1st Cir. 1997) (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 843 (1st Cir.1993)).

    1.   Time bar.

Title VII requires a claimant seeking to recover for a discrete act of discrimination to exhaust administrative remedies and file her claims of unlawful employment practices within either 45, 180, or 300 days of the occurrence of that practice.  The applicable term depends on whether the action is filed against a federal or private employer, and in which agency the action is filed.  42 U.S.C. §§ 2000e-5(e)(1), 2000e-16(a).

In the present case, the regulations applicable to the VA require an aggrieved employee to "initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Failure by a claimant do so will cause the discrete discriminatory acts to be time-barred and not actionable, even if they are related to acts alleged in timely filed charges.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061 (2002).

_____

Courts have recognized a narrow exception to the limitations period via the "continuing violation doctrine."  See Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).  Under this doctrine, "a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009).  The continuing violation doctrine simply "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 19 (1st Cir. 2008) (quoting Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797, 801 (7th Cir. 2008)).

However, the continuing violation doctrine does not apply to discrete acts of alleged discrimination that occur on a "particular day."  See Morgan, 536 U.S. at 115, 122 S.Ct. 2061 ("Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.").  Therefore, the doctrine applies only to claims that cannot be said to occur on a particular day and require repeated conduct to establish an actionable claim, such as hostile work environment claims.  Id.

Plaintiff filed several charges before the EEO in the instant case.  Defendant posits that for several of the claims raised, Plaintiff's initial contact with an EEO Counselor occurred 45 days after the acts occurred and she is thus precluded from bringing them now. Plaintiff argues in her opposition that she is not considering them as "discrete" discriminatory acts, but rather that they comprise an ongoing pattern of harassment which is part of her overall hostile-work environment claim.  Pursuant to the continuing violation doctrine, she avers they must be considered as part of Defendant's conduct as a whole, as they emanate from the same discriminatory animus.

The record shows that on November 3, 2014, Plaintiff contacted an EEO Counselor regarding 18 events which she subsequently included in the consolidated EEO charge she filed on December 4, 2014. Therefore, the 45-day limitation period extends back to September 19, 2014. The EEO Office determined that 9 of the events fell outside the statutory time period but were sufficiently related to the overall pattern of harassment, as they involved the same management officials and were inextricably intertwined to the remaining events. The EEO ultimately accepted all 18 events in its analysis of Plaintiff's overall harassment claim.

The same occurred with her March 20, 2018 EEO grievance, which was comprised of 34 events. The EEO Office determined that 3 of the events complained of fell outside the statutory time period but were sufficiently related to the overall pattern of harassment and accepted all 34 events for investigation.

After a careful review, the Court agrees with Plaintiff. It is evident, as the EEO found, that the actions complained of in the allegedly time-barred claims involve the same agency officials and were closely intertwined to other events Plaintiff complained about. For the 2014 filing, the claims involved Supervisor López and pertained to Plaintiff's supervision, leave requests and general work performance. For the 2018 filing, the grievances related mostly to Supervisors Ruiz and Zayas, and dealt almost exclusively with Plaintiff's absences and Defendant's changes to her schedule. Plaintiff has made clear that she is not bringing these claims as discrete actionable acts but rather as in support of her overall harassment claims. Thus, the Court will consider the incidents as such. Morgan, 536 U.S. at 105, 122 S.Ct. 2068 (holding that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the

statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period").

## 2. The hostile work environment claim.

To successfully bring forth a claim for a hostile work environment, a Plaintiff must establish the following: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership of the protected class; (4) the harassment was so severe or pervasive that it altered the conditions of her employment and created an abusive work environment; (5) the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) some basis for employer liability has been established.  See Torres-Negrón v. Merck & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007); Cerezo-Martín v. Agroman, 213 F. Supp. 3d 318, 326 (D.P.R. 2016).

Under the McDonnell Douglas burden-shifting scheme, "a plaintiff bears the initial burden of proffering evidence sufficient to establish a *prima facie* case of discrimination." Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017); Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817).  The defendant then bears the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action.   Cherkaoui, 877 F.3d at 24.  If the defendant does so, the burden shifts back to the plaintiff, who must then bring forth evidence that the explanation given is pretextual and that discriminatory animus really prompted the adverse action.  Alston v. Town of Brookline Massachusetts, 308 F.

Supp. 3d 509, 531 (D. Mass. 2018).

The VA contends in its request for summary disposition that Plaintiff cannot establish elements 3 and 4, that the harassment she suffered was a result of her national origin, that she was Peruvian, and that the harassment was so severe or pervasive that it altered the conditions of her employment.  The Court agrees.

Regarding element number 3, the record shows in a sweeping fashion, that Mrs. González, one of Plaintiff's co-workers, heard some of the other co-workers and Supervisor López "always" making comments about Plaintiff's national origin.   (D. Exhibit 36, p. 5, ¶ d).   There is no other information as to when or how Mrs. González heard these comments or which co-workers uttered them, and in what context they were made.  The record evidence also states that in 2014, another co-worker, Mr. Algarín, heard Plaintiff called "la Peruana" or "the imported one" once, and another time, said that "people from third world countries" were "useless."  (D. Exhibit 37, p. 5).  The record also establishes that Plaintiff did not hear these comments, but rather, they were made and heard by others.  At this juncture, this scant evidence is insufficient for the Court to find that the actions complained of were exclusively done *because* of Plaintiff's Peruvian descent.  There is simply nothing else on the record to so establish.

The Court also notes that these statements were part of Plaintiff's EEO claim and were rendered as answers to a written interrogatory as a result of that investigation.  For this reason, there is a lack of additional evidence that could serve to establish that the actions the VA undertook were due to Plaintiff's national origin.  More is needed in order to oppose summary judgment.  See Caldareri v. Citibank , N.A., Civil No. 15, 2069, 2018 WL 11417012 at *46 (D.P.R. June 26, 2018) ("Plaintiff's sweeping, conclusory statement

that Maurás 'always' commented on her black clothing and commented about her gray hair on some five (5) occasions is insufficient at this stage").

The Court reminds Plaintiff that it is her burden to present evidence that the conduct complained of was done *because* of her membership in one of the categories protected by the cited federal provisions.  Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 118 S.Ct. 998 (1998). That is to say, Title VII does not prohibit all verbal and/or physical harassment in the workplace, but is directed only at discrimination *because of the protected category*.  Rivera v. Puerto Rico Aqueduct and Sewer Auth., 331 F.3d 183, 189-91 (1st Cir. 2003) (summary judgment granted for employer where plaintiff was subjected to uninvited rude and unprofessional conduct assumed to be severe and pervasive but not because of religion).

On this record, the Court finds Plaintiff has not met her burden of establishing that the VA's actions were undertaken because of her national origin.  These isolated incidents, where her national origin was rarely mentioned, are simply insufficient for the Court to establish that the VA's actions were undertaken *because* of that protected category.  See Rivera, 331 F.3d at 189 (plaintiff "must show that alleged discriminatory conduct was not 'merely tinged' with remarks abhorrent to her religion but actually was, in either character or substance, discrimination because of religion").

The same reasoning applies to element number 4, that the actions complained of were so severe or pervasive that they altered the conditions of Plaintiff's employment and created an abusive work environment.  Plaintiff proffers she was allegedly incessantly harassed by supervisors López, Ruiz, and Zayas when they subjected her to excessive supervision, called her on her days off, unexpectedly changed her work schedule, gave her

unjustified memos and denied her leave she says she was entitled to, all because of her national origin.  Plaintiff avers this created an abusive work environment, but she offers no evidence to establish that these actions altered the conditions of her employment. For instance, Uncontested Fact Nos. 23, 24, 25 and 36 all demonstrate that the changes did not impact Plaintiff and further, that many of them were done so she could resolve her pending administrative matters.

The United States Supreme Court has stated that Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993).  Though there is no "mathematically precise test" to determine whether plaintiff presented sufficient evidence that she was subjected to a hostile work environment, "simple teasing, offhand comments, and isolated incidents" (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998).  Courts must use "[c]ommon sense, and an appropriate sensitivity to social context," to distinguish between innocuous behavior and severely hostile or abusive conduct. Oncale, 523 U.S. 75, 82, 118 S.Ct. 998; Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003).   The Court finds the statements and actions Plaintiff complained about in the present case simply do not reach the level of offense required by Harris, 510 U.S. at 17, 114 S.Ct. 367 and its progeny.

Notably absent from this record is the pervasive name calling and teasing that often exists in this type of case, where for example, in age discrimination cases a person

is called "la vieja" (the old one), was told that her hairstyle was "antiguo" (old-fashioned) and "te peinas como una vieja" (you comb your hair like an old woman). Rodríguez-Cardi v. MMM Holdings, Inc., Civil No.14-1854, 2018 WL 1725549 at *6 (D.P.R. Mar. 30, 2018). Also absent from this case is the pervasive nature of the actions in cases that have found harassment actionable. See Arrieta-Colón v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 88 (1st Cir. 2006) (affirming disability harassment verdict where the evidence showed that the plaintiff was subject to "constant mockery" due to his disability); Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 19 (1st Cir. 2002) (Plaintiff was subjected to harassment on a daily basis, including humiliating remarks and innuendos); Rosario v. Dep't of the Army, 607 F.3d 241 (1st Cir. 2010) (harassment found when supervisor complained about plaintiff's appearance on a daily basis, regularly drew the attention of her co-workers to her body and undergarments, shadowed her closely, challenged her decisions, mocked her, described her as a street woman to others and criticized her to others).

While the facts presented in this case might indicate an uncomfortable working relationship between Plaintiff and her supervisors and some of her co-workers, they were more of a corrective nature, and were not sufficiently severe or pervasive to constitute a hostile work environment. See Quiñones v. Puerto Rico Hospital Supply, 307 F.Supp.2d 352 (D.P.R. 2004) (episodic indignities not sufficient); Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011) (supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws; acts were upsetting, but not severe); Landrau Romero v. Caribbean Restaurants, Inc., 14 F. Supp. 2d 185, 191 (D.P.R. 1998) (four (4) or five (5) incidents over seven (7) week period not actionable). "The workplace is not a cocoon, and those who

labor in it are expected to have reasonably thick skins -thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world". Suárez v. Pueblo Intern., Inc., 229 F.3d 49, 54 (1st Cir. 2000).

In sum, the evidence on this record does not demonstrate that the conduct complained of was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. Since Plaintiff has failed to establish elements 3 and 4 of a *prima facie* case of hostile work environment claim, there is no need for the Court to delve on the other elements.

Even assuming for the sake of the argument that Plaintiff can establish a *prima facie* case, on this record, Defendant has brought forth a plethora of evidence to justify its actions, to wit, that Plaintiff's work performance was not meeting the VA's expectations. The record contains repeated instances of Plaintiff's work transgressions, such as her failure to finish her daily workload, speaking with friends on the phone during work time, having unauthorized visitors in the workplace, coming to work outside her schedule, failing to comply with rules and regulations, and instances where she signed that "did not agree" with the contents of memos that were given to her. Defendant's actions do not evidence mocking or teasing but are rather corrective actions due to Plaintiff's unsatisfactory work performance, and constitutes a valid, non-discriminatory reason for the VA's actions. Courts have found unsatisfactory work performance to be enough "to enable a rational factfinder to conclude that there existed a nondiscriminatory reason" for corrective action and ultimately, dismissal. See Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997); see also García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) (deficient performance); Meléndez v. Autogermana, 622 F. 3d 46, 51-52

(1st Cir. 2010) (failure to meet sales quota); <u>Menzel v. Western Auto Supply Co</u>., 848 F.2d 327, 331 (1st Cir. 1988)(inadequate job performance and violation of company policy); <u>Bennet v. Watson & Wyatt & Co</u>., 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001)(lateness); <u>Caldareri</u>, 2018 WL 11417012 at *47 (absenteeism and inability to perform the main aspects of her job).  Hence, the VA has established ample justification for its actions.

The ball squarely in Plaintiff's court now, she must put forth sufficient facts for a reasonable factfinder to conclude that the VA's proffered reasons for its actions were pretextual and that the true reason was discriminatory animus.  At summary judgment, however, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.'" <u>Mesnick</u>, 950 F.2d at 824.

The Court finds Plaintiff has failed to do so.  Opting to concentrate on the elements of her *prima facie* case, Plaintiff failed to offer any reason to explain why her national origin, as opposed to her work performance, was the reason for Defendant's actions.[4]  As argued by the VA, pretext "means something worse than a business error." <u>Ronda-Pérez v. Banco Bilbao Argentaria-Puerto Rico</u>, 404 F.3d 42, 45 (1st Cir. 2005).  "It means deceit -a lie- a made-up story to cover one's tracks". <u>Rodríguez-Cardi</u>, 2018 WL 1725549 at*9; <u>Collazo-Rosado v. University of Puerto Rico</u>, 765 F.3d 86, 92 (1st Cir. 2014).  The VA has proffered a multitude of reasons to explain why it undertook the actions it did.  Plaintiff, on the other hand, provided no evidence in support of the pretext argument for the

---

[4] Plaintiff only addresses this element in the context of her retaliation claims discussing only the actions surrounding her medical leave issues at the time she was discharged in 2019.  (Docket No. 93, pp. 25-26.)

harassment claim.  Merely saying that the VA's assertions are a pretext, without more, is not enough at summary judgment.  See Menzel v. W. Auto Supply Co., 848 F.2d 327, 330 (1st Cir. 1988) ("Casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent.... Menzel had to address those reasons and show, by a preponderance of the evidence, that they were most probably not the actual reasons").  The record is devoid of any evidence demonstrating that the VA's articulated reason for its decisions was pretextual, much less one to discriminate against Plaintiff because of her national origin.

For these reasons, the Motion for Summary Judgment on the hostile work environment claim is GRANTED.

**B. Retaliation.**

To maintain a claim of discriminatory retaliation, Plaintiff must produce evidence that (1) she engaged in protected conduct under Title VII; (2) she experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action.  See Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002); Kosereis, 331 F.3d at 217.

There is no dispute that Plaintiff filed two EEO charges, one on December 14, 2014, and a second one on March 20, 2018, which constitute protected activity.  Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012).  After the December 2014 filing, Plaintiff alleged Supervisor López became hostile, exercised excessive supervision over her, criticized and ridiculed her, and unexpectedly changed her work schedules in violation of her contract and job description.  Approximately one to two months passed between the December 2014 filing and Supervisor López' allegedly retaliatory first acts.  Thus, the time

between the EEO complaint and the actionable conduct is sufficiently near in time and related to suggest a causal connection.  See Sánchez-Rodríguez v. AT&T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012) (finding three-month time span close enough to suggest causation).

Defendant proffers that Supervisor López did not know of Plaintiff's protected activity, but the record evidence belies that.  On the contrary, Supervisor López stated in her testimony before the EEO that she was indeed aware of Plaintiff's EEO activity since she received a copy after Plaintiff filed the claim.  (D. Exhibit 2, pp. 265-266, sub. pp.5-6).  Therefore, a reasonable jury could find that Defendant's conduct was done in retaliation for Plaintiff's December 2014 EEO filing.

As to the March, 2018 filing, the evidence on the record shows that Plaintiff filed several FMLA leave requests in April and May, 2018 which were denied or changed to AWOL.  These actions culminated in Plaintiff's ultimate dismissal from the VA in 2019.  As with the case of the 2014 EEO filings, these actions were also sufficiently close to the EEO filing date to possibly constitute retaliatory action by Defendant.

Having Plaintiff established a *prima facie* case of retaliation, the inquiry moves to step two of the McDonnell-Douglas framework, wherein the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 26 (1st Cir. 1998).  Once the employer has done this, the McDonnell Douglas framework "drops out of the picture" and the plaintiff once again shoulders the burden to demonstrate that the employer's legitimate reason was pretext, and that the actual reason for the adverse employment action was the employer's discriminatory or retaliatory animus.  Fennell v.

First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996) (*citing* Mesnick, 950 F.2d at 827). Accordingly, Plaintiff must then offer some minimally sufficient evidence of the VA's pretext and of the employer's discriminatory animus to prevail over the VA's Motion for Summary Judgment.

As to the 2014 filing, Defendant avers that its actions were justified insofar as Plaintiff constantly failed to abide by the rules and regulations. Indeed, the record is rife with memos to Plaintiff for failure to abide by regulations and to comply with the VA's protocols in certain cases, including several memos that were given to Plaintiff for her alleged transgressions. Plaintiff, in turn, indicated she "did not agree" with the memos when they were given to her. The record also contains evidence of the multiple workplace issues she had with her co-workers.

However, Plaintiff chose in her Opposition to discuss at length the events she felt supported her retaliation claims but failed to offer any argument as to the VA's alleged pretext for the 2014 claim. That is Plaintiff's burden at this stage, and she failed to carry it. Instead, Plaintiff only elaborated on the retaliation issue as to her second EEO claim in the year 2018, which culminated in her dismissal.

For this reason, the Court finds that the VA's non-discriminatory reason, Plaintiff's spotty work record, stands uncontested. Thus, Defendant's Motion for Summary Judgement as to the retaliation claim of the 2014 EEO filing is GRANTED.

As to the 2018 filing, the record shows that Plaintiff was undergoing psychiatric treatment and had a number of absences, including several hospitalizations. Defendant's proffered reason for its actions is that Plaintiff had many unscheduled and unjustified absences and her work suffered as a result of this. Plaintiff's position is that she was

eligible for the leave which should have been granted, and that the VA used this as an excuse to penalize her and ultimately dismiss her based on her record of absenteeism, all due to her national origin.

This claim suffers from the same infirmity as her hostile work environment claims, to wit, that Plaintiff needs to establish that the actions undertaken, that is the leave denial and her ultimate dismissal, were due to discrimination *based on her national origin*. See Mesnick, 950 F.2d at 828 (Plaintiff "tendered nothing, direct or circumstantial, suggesting a retaliatory animus. To the contrary, the record, read as a whole, is more consistent with an employer's longstanding desire to improve an employee's behavior than with some sort of vengeful preoccupation"). Therefore, Plaintiff has failed to establish that the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question for her second retaliation claim. Id.

Consequently, Defendant's Motion for Summary Judgement as to the retaliation claim of the 2018 EEO filing is GRANTED.

Finally, Plaintiff also brought forth a claim in her Amended Complaint for retaliation on the basis of disability, alleging she was not accommodated in retaliation for being handicapped. She mentioned facts alluding to this condition in her proffered uncontested facts but failed to discuss this matter on the merits in her Opposition. Specifically, Plaintiff did not address how she suffered from a disability and how the VA retaliated against her on that basis. Coupled with Plaintiff's allegations that she will not pursue the claims for reasonable accommodation due to disability, the Court deems this claim waived. Zannino, 895 F.2d at 17 ("a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace").

For the foregoing reasons, Defendant's Motion for Summary Judgment as to the retaliation claims due to protected activity and as to the retaliation claims on the basis of disability is GRANTED.

### C. FMLA.

The FMLA prohibits employers from interfering with employees' exercise of their family and medical leave rights or discriminating against them based on their opposition to a practice made unlawful under the Act. See 29 U.S.C. § 2615(a); see also Richards v. City of Bangor, 878 F. Supp. 2d 271, 280 (D. Me. 2012).

Plaintiff brought two claims under the FMLA, to wit, the VA denied and/or interfered with her medically authorized leave, and second, the VA retaliated against her for having asked for and/or used benefits afforded and protected under the FMLA.

1.   Interference.

"To prevail on an FMLA-interference claim, an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." Ocasio v. Oriental Bank, Civil No. 15-1309 (DRD), 2016 WL 3945172, at *8 (D.P.R. 2016). Unlike in a retaliation claim, "no showing as to employer intent is required". Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331 (1st Cir. 2005). The key issue is simply whether the employer provided its employee the benefits to which she was entitled to pursuant to the FMLA. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998); Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 722 (1st Cir. 2014).

Defendant fails to address the FMLA claim directly in its Motion for Summary Judgment.  However, many of the uncontested facts it proffered specifically address this issue.   Defendant's proffered facts point out that Plaintiff failed to comply with elements 3 and 4, to wit, whether she was entitled to said leave and whether she made timely requests and argues she thus cannot prevail on her FMLA-interference claim. Plaintiff contends in her Opposition that she complies with the first four factors, and the issue to be determined is element number five, to wit, whether the VA denied her FMLA benefits to which she was entitled.   Plaintiff argues she has met her burden because the VA denied her leave in several instances.

The Court finds there are issues of fact as to elements 3 and 4, whether or not Plaintiff was entitled to the leave she sought and made timely and proper requests therefor.  There is conflicting and missing evidence on the record that is necessary for the Court to be in a position to rule on this matter.

As previously discussed, the record contains instances where Plaintiff improperly petitioned for leave or the VA informed her it was unable to grant the leave at that particular time due to need of service, thus buttressing the VA's defense.   On the other hand, Plaintiff argues that the denials of her leave requests were the VA's excuse to create an absentee record and ultimately dismiss her.  The fact that Plaintiff was dismissed by the VA while she was allegedly on medical leave weighs against Defendant.[5]  In addition, the parties even bicker over whether or not Plaintiff properly sought and was granted leave at that particular time, a crucial fact for this analysis.

---

[5] An action which directly contradicts the VA's argument that "there was no material change in Plaintiff's leave nor employment, and, thus, there is no 'adverse' action that can be actionable against the Defendant under the FMLA." (Docket No. 108, p. 11).

The VA indicates in its proffered facts that on October 17, 2018, Plaintiff was given a "Return to Duty "letter, and its next fact jumps to April 23, 2019, over six months later when it gave her the "Proposed Notice of Removal" and later ultimately discharged her on May 9, 2019.  (Docket No. 70, Fact Nos. 59, 60 and 61).  Although the record contains some certifications by Hospital Panamericano, they are for partial hospitalizations, and the record submitted by Defendant is bereft of any other information regarding those seven (7) months when the VA alleges Plaintiff failed to report for work.  Plaintiff, on the other hand, argues that her psychiatrist, Dr. Cuevas, recommended she take medical leave from July 2018 until January 2019 and thereafter until she was dismissed, and the VA was well aware of this.

Defendant's proffered facts mention nothing as to the events that immediately preceded and gave way to Plaintiff's dismissal, limiting them only to those two incidents in October 2018 and April 2019, and nothing in between.  However, the record contains at least two of Plaintiff's certifications for partial hospitalizations which were signed as received by Supervisor Ruiz, one for October 11-18, 2018, and another for February 5-11, 2019, the time immediately preceding her dismissal.[6]  This serves to establish that the VA was indeed on notice of at least two of these hospitalizations and regarding Plaintiff's medical condition.  The VA will have to explain this discrepancy to the jury, and it will be up to the jurors to evaluate this matter and decide whether or not the VA acted accordingly or, as Plaintiff alleges, illegally denied her leave requests and ultimately dismissed her on that basis.

---

[6] Docket No. 88, Exhibit 37.

For the foregoing reasons, Defendant's Motion for Summary Judgment on the FMLA interference claim is DENIED.

2. Retaliation.

As to the final claim, retaliation under the FMLA, an employee must show that "(1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." Waterman v. Paul G. White Interior Sols., No. 2:19-cv-000320-JDL, 2019 WL 5764661, at *3 (D. Me. Nov. 5, 2019). That is to say, Plaintiff must establish that the actions the VA undertook were done because she requested FMLA leave. Once Plaintiff makes this showing, the burden shifts to the VA to proffer a non-discriminatory reason for its actions. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998) ("When there is no direct evidence of discrimination, the McDonnell-Douglas burden-shifting framework applies to claims that an employee was discriminated against for availing himself of FMLA-protected rights").

The first and second elements are met, insofar as Plaintiff filed many leave requests and suffered an adverse employment decision in the denied leave and ultimately, in her dismissal. As to the third element, the evidence on the record shows that Plaintiff sought several FMLA leave requests after the March 2018 filing of her EEO claim, and the VA denied the requests or charged them to AWOL, and was ultimately dismissed. These actions were also sufficiently close to possibly constitute retaliatory actions by Defendant.

The burden now on the VA's shoulders, it avers again that no discriminatory animus existed, and defends its actions citing to Plaintiff's failure to adhere to proper leave procedures and failure to submit timely and proper documentation. Plaintiff asserts

that this is untrue and insists that she always sought leave correctly and the denials were an excuse to create an absentee record and ultimately dismiss her. Plaintiff proffers that these issues must be adjudicated by a jury.

As with the previous FMLA claim, for the Court to determine whether the VA acted with intent, it must first find that Plaintiff was entitled to the leave she sought, and whether that leave was timely and properly requested and approved by Defendant, particularly for the months preceding her dismissal. As there are issues of material fact surrounding these actions, the Court cannot grant summary judgment on this claim.

Accordingly, Defendant's Motion for Summary Judgment as to the FMLA retaliation claim is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's "Motion for Summary Judgment" is GRANTED IN PART and DENIED IN PART (Docket No. 69), as follows:

a. GRANTED as to Plaintiff's hostile work environment claim.

b. GRANTED as to Plaintiff's retaliation claims for the EEO filings.

c. GRANTED as to Plaintiff's claims brought under the Rehabilitation Act and/or the Federal Employees Compensation for discrimination for failure to reasonably accommodate.

d. GRANTED as to Plaintiff's retaliation claims on the basis of disability.

Accordingly, all the above-mentioned claims are DISMISSED WITH PREJUDICE.

e. DENIED as to the interference and retaliation FMLA claims.

Additionally, Defendant's "Motion to Strike" is GRANTED (Docket No. 112) and Plaintiff's Notice of Errata (Docket No. 111) is STRICKEN from the record.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 30th day of May 2023.

                                    S/CAMILLE L. VELEZ-RIVE
                                    CAMILLE L. VELEZ-RIVE
                                    UNITED STATES DISTRICT JUDGE